Filed 1/30/23  P. v. Juarez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>JUAN MANUEL JUAREZ,<br><br>        Defendant and Appellant. | B319423<br><br>(Los Angeles County<br>Super. Ct. No. PA063069) |

APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

Larry Pizarro, under appointment by the Court of Appeal, for Defendant and Appellant; Juan Manual Juarez, in pro per.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Juan Manual Juarez guilty of second degree murder and of attempted murder. He thereafter petitioned for resentencing under Penal Code[1] section 1172.6, which limits accomplice liability for murder.[2] The trial court denied that petition, and Juarez appealed. His appellate counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436.[3] However, we asked counsel to brief whether the instructions given permitted the jury

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3]    While this matter was pending on appeal, our California Supreme Court issued *People v. Delgadillo* (2022) 14 Cal.5th 216. The court held that the procedures in *Anders v. California* (1967) 386 U.S. 738 and *People v. Wende* do not apply to appeals from the denial of postconviction relief under section 1172.6. The court instructed that on appeal from an order denying section 1172.6 relief, a counsel who finds no arguable issue should file a brief informing the appellate court of that determination and include a concise factual recitation. (*Delgadillo*, at pp. 231–232.) The appellate court shall send a copy of the brief to the defendant informing the defendant of the right to file a supplemental brief and that if one is not filed within 30 days, the court may dismiss the matter. (*Ibid*.) If a supplemental brief is filed, we must evaluate the contentions in it. (*Id*. at p. 232.) If a supplemental brief is not filed, we may dismiss the appeal as abandoned without a written opinion. (*Ibid*.) However, we retain discretion to independently review the record. (*Ibid*.) Here, Juarez filed a supplemental brief *and* we requested additional supplemental briefing. Therefore, we address the merits of his section 1172.6 petition.

to convict Juarez of murder under a theory prohibited under section 1172.6, namely, a theory under which malice was imputed to him based solely on his participation in the crime. We now conclude that the instructions did not permit it to find Juarez guilty of second degree murder without finding that he personally acted with malice aforethought.

## BACKGROUND[4]

### I. The underlying conviction

An information charged Juarez with the murder of Isaac Salinas and the attempted murder of Isaac's brother, Candido Salinas.[5] At Juarez's trial, evidence was introduced that one night in 2008, Juarez, Jose Padilla, Erick Rodriguez, and one or two other men drove to the Salinas's house. Padilla was angry because Isaac was dating Padilla's sister. Juarez, who drove, parked the car so that it blocked Candido's van in the driveway. According to Candido, Padilla got out of the car and demanded that Candido tell him if his sister was there. Candido told him his sister was fine, but Padilla retrieved a shotgun from between the front driver's and passenger's seats in the car. Juarez was standing outside the car, by the driver's side door. Padilla pointed the shotgun at Candido and threatened to shoot him.

At that point, Isaac came out of the house. Padilla pointed the shotgun at him and demanded to see his sister. Isaac tried to hide by getting to the street, but Juarez blocked Isaac's path.

---

[4] The background is largely derived from the opinion affirming the judgment of conviction, *People v. Juarez* (Nov. 14, 2011, B223213) [nonpub. opn.].

[5] Because the victims share a surname, we refer to them by first names to avoid confusion.

3

Unable to get to the street, Isaac turned, and Padilla shot him in the abdomen, killing him. When Candido tried to take the shotgun from Padilla, Juarez hit Candido on the head with a heavy object. Padilla shot at Candido, but missed. Juarez pushed Padilla into the car, and they drove off.

Rodriguez, one of the men who went with Padilla and Juarez to the Salinas's house that night, testified that Padilla said they were going there to get his sister and that Padilla was "like upset." However, there was no discussion that Padilla planned to shoot Isaac. According to Rodriguez, when they arrived, Padilla got out of the car with the shotgun. Padilla was mad, and when Isaac came outside, Isaac ran around a car. Padilla shot Isaac. Then, when Candido tried to take the shotgun from Padilla, Juarez got out of the car and joined the struggle for the shotgun. When they were driving away, Juarez called Rodriguez a "bitch" for failing to help. Rodriguez also said that Juarez had been trying to get jumped into a gang.

Juarez testified in his defense that Padilla had asked him for a ride to Isaac's house. Juarez never saw Padilla with a shotgun, and Padilla never said he was going to the Salinas's home to kill or to harm someone. When they arrived at the house, Padilla got out of the car with a shotgun. When Isaac came outside, he and Padilla started running around a car and then Padilla shot Isaac. Juarez said that he remained near his car. He did not struggle with Candido over the shotgun, and he did not hit Candido.

In 2009, a jury found Juarez guilty of the second degree murder of Isaac (§ 187, subd. (a); count 1) and of the attempted murder of Candido (§§ 664, 187, subd. (a); count 2). The jury

4

found true a principal-armed enhancement (§ 12022, subd. (a)(1)) as to both counts.

In January 2010, the trial court sentenced Juarez, on count 1, to 15 years to life and to a one-year term for the gun enhancement and on count 2, to seven years and to a one-year term for the gun enhancement.

II.    The petition for resentencing

In 2021, Juarez petitioned for resentencing under section 1172.6. On his preprinted form, he checked the appropriate boxes to show eligibility for relief and requested counsel. The trial court appointed counsel to represent Juarez. The People opposed the petition on the ground that Juarez's jury was not instructed on felony murder or the natural and probable consequences doctrine. The People submitted this Division's opinion affirming the judgment of conviction (*People v. Juarez, supra*, B223213) and the jury instructions. The trial court found that Juarez had not made a prima facie showing of entitlement to relief because the jury was not instructed on felony murder or the natural and probable consequences doctrine. It accordingly denied the petition.

This appeal followed. Court-appointed appellate counsel filed an opening brief that raised no issues and asked this court to independently review the record under *People v. Wende, supra*, 25 Cal.3d 436. Juarez filed a supplemental brief.[6] We then asked the parties to supplementally brief whether Juarez was convicted of murder under a theory under which malice was imputed to him based solely on his participation in the crime,

---

[6]     Juarez filed a document entitled writ of habeas corpus that we deem to be a supplemental brief.

5

citing *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*). We now address that issue.

## DISCUSSION

I.    Senate Bill No. 1437 and imputed malice

To the end of ensuring that a person's sentence is commensurate with the person's individual criminal culpability, Senate Bill No. 1437 (2017–2018 Reg. Sess.) limited accomplice liability under the felony-murder rule, eliminated the natural and probable consequences doctrine as it relates to murder, and, as particularly relevant here, eliminated convictions for murder based on a theory under which malice is imputed to a person based solely on that person's participation in a crime. (§ 1172.6, subd. (a) [added by Sen. Bill No. 1437]; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 959*; People v. Gentile* (2020) 10 Cal.5th 830, 842–843.) Senate Bill No. 1437 thus added section 189, subdivision (e) (limiting application of the felony-murder rule) and section 188, subdivision (a)(3) (stating that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime").

Here, Juarez contends that two instructions given to his jury allowed it to convict him of murder under a theory by which malice was imputed to him based solely on his participation in the murder. The first instruction, CALCRIM No. 520, stated that murder requires malice aforethought, of which there are two kinds: express and implied. A defendant acts with express malice if the defendant unlawfully intended to kill. A defendant acts with implied malice if (1) the defendant "intentionally committed an act;" (2) "the natural and probable consequences of the act were dangerous to human life;" (3) at the time he acted he

6

knew his act was dangerous to human life; and (4) the defendant "deliberately acted with conscious disregard for human life." (CALCRIM No. 520.)

The second instruction, CALCRIM No. 401, stated that the defendant is guilty of a "crime" based on aiding and abetting if the People prove that (1) the perpetrator committed the crime; (2) the defendant knew the perpetrator intended to commit the crime; (3) before or during the crime's commission, the defendant intended to aid and abet the perpetrator in committing the crime; and (4) the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. The instruction further stated, "Someone aids and abets a crime if he or she *knows the perpetrator's unlawful purpose* and he or she *specifically intends* to and does in fact aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime."[7] (CALCRIM No. 401, italics added.)

At least two Courts of Appeal— *People v. Powell* (2022) 63 Cal.App.5th 689 and *Langi, supra*, 73 Cal.App.5th 972—have found these instructions, or their CALJIC precursors, in combination problematic. *Powell*, at page 714, found that CALCRIM No. 401, the same aiding and abetting instruction used here, is "not tailored for" aiding and abetting an implied malice murder. Specifically, while CALCRIM No. 401 refers to an intent to aid and abet a "crime," the aider and abettor in fact needs to "intend the commission of the perpetrator's *act*, the natural and probable consequences of which are dangerous to

---

[7]     The trial court also gave CALCRIM No. 521, which instructs that murder is of the first degree if committed willfully, deliberately and with deliberation, and all other murders are of the second degree.

7

human life, intentionally aid in the commission of that *act* and do so with conscious disregard for human life." (*Powell*, at p. 714.) Stated otherwise, CALCRIM No. 401 does not require the aider and abettor to have known that the act aided and abetted was life-threatening or require the aider and abettor to have personally acted with conscious disregard to human life.

The court in *Langi*, *supra*, 73 Cal.App.5th 972, applied *Powell*'s reasoning to the section 1172.6 context. In that case, Langi and three other men beat the victim, who died from head trauma after falling and hitting his head during the assault. Langi's jury was not instructed on the natural and probable consequences doctrine but was instructed on aiding and abetting with CALJIC No. 3.01[8] and on second degree murder with CALJIC No. 8.31.[9] His jury found him guilty of second degree

---

[8] CALJIC No. 3.01, as given to Langi's jury, stated that a person aids and abets the commission of a crime when the person (1) with knowledge of the unlawful purpose of the perpetrator, and (2) with the intent or purpose of committing or encouraging or facilitating the crime's commission, (3) by act or advice aids, promotes, encourages or instigates the crime's commission. (*Langi*, *supra*, 73 Cal.App.5th at p. 981.)

[9] CALJIC No. 8.31, as given to Langi's jury, stated that a killing is a second degree murder if (1) the killing resulted from an intentional act, (2) the act's natural consequences are dangerous to human life, and (3) the act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. When the killing is the direct result of such an act, it is unnecessary to prove that the defendant intended that the act would result in the person's death. (*Langi*, *supra*, 73 Cal.App.5th at p. 981.)

8

murder, and the trial court summarily denied his subsequent section 1172.6 petition.

*Langi*, however, found that the defendant was entitled to an evidentiary hearing because the instructions permitted him to be found guilty of aiding and abetting second degree murder by improperly imputing malice to him and without finding he personally acted with malice. The court explained that although the aiding and abetting instruction stated that a person aids and abets a crime if the person acts with knowledge of the perpetrator's unlawful purpose and with the intent or purpose to commit or encourage that crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Langi, supra*, 73 Cal.App.5th at p. 982.) That is, "while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent." (*Id.* at pp. 982–983.) Under the instructions given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, Langi need only have intended to encourage the perpetrator's intentional act—punching the victim—whether or not Langi intended to aid or encourage the victim's killing, and whether or not Langi personally knew of and disregarded the risk of such a killing. (*Id.* at p. 983.) *Langi* concluded that the

9

instructions should have been tailored to state that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must have acted with the mental state of implied malice. (*Ibid.*)

In our view, *Langi* misinterprets CALCRIM No. 401's reference to "unlawful purpose" by stating that the actual perpetrator's unlawful purpose may been only to strike, injure or embarrass the victim—unlawful purposes that presumably implicate something less than express or implied malice. This interpretation divorces "unlawful purpose" from its context. To be sure, in isolation "unlawful purpose" could mean something other than intent, such as motive, which is what we understand *Langi* to be saying. But we do not read phrases in instructions in isolation. (See *People v. Burton* (2018) 29 Cal.App.5th 917, 925 [we interpret instructions together as a whole].)

In the context of CALCRIM Nos. 401 and 520, "unlawful purpose" unambiguously refers to the crime, which for murder requires either intent to kill (for express malice) or committing an act knowing it is dangerous to human life and with conscious disregard thereof (for implied malice). As given here, CALCRIM No. 401 thus required the aider and abettor to know that the perpetrator intended to commit the crime of *murder*, which is defined in CALCRIM No. 520 as requiring the perpetrator to have express or implied malice. CALCRIM No. 401 then states that someone "aids and abets a crime [murder] if he or she knows of the perpetrator's *unlawful purpose* and he or she *specifically intends* to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime [murder]." (Italics added.) This language allowed the jury to find Juarez aided and abetted murder only if Juarez knew Padilla harbored

10

the unlawful purpose of committing "that crime" of murder and Juarez "specifically intend[ed]" to aid and abet Padilla to commit murder. It is unclear how an aider and abettor could know that the perpetrator intended to commit murder and help the perpetrator commit that murder—which, it bears repeating, is defined in CALCRIM No. 520 as requiring malice aforethought— and yet not personally harbor the requisite malice. As our California Supreme Court said in *People v. McCoy* (2001) 25 Cal.4th, 1111, 1123, where the only unlawful purpose charged is an unlawful killing, "one cannot knowingly and intentionally help another commit an unlawful killing without acting with malice."[10]

Stated simply, "unlawful purpose" is interchangeable here with unlawful murder requiring malice aforethought, and it is unreasonable to read the instruction otherwise, as suggesting Juarez could be liable for aiding and abetting murder despite knowing only that Padilla intended some other, lesser "unlawful purpose." There is no reason why a jury, as *Langi* suggests, would think that unlawful purpose means anything other than acting with an intent to kill or committing an act with conscious disregard for human life. Indeed, our California Supreme Court has rejected a similar interpretation of the aiding and abetting instruction as that urged by *Langi*. In *People v. Hardy* (2018) 5 Cal.5th 56, 96, the defendant argued that his jury was not properly instructed that torture and aiding and abetting require specific intent. After quoting the standard instruction on aiding and abetting, CALJIC No. 3.01, the court said that the language

___

[10] In contrast, the *Langi* defendant was also charged with and found guilty of the crimes of robbery and battery. (*Langi, supra,* 73 Cal.App.5th at p. 976.)

11

"intent or purpose" in it was not something different from or less than specific intent. (*Hardy*, at p. 96; see also *People v. Beeman* (1984) 35 Cal.3d 547, 561.) "If anything, 'purpose' is a higher standard than 'intent.' " (*Hardy*, at p. 96.)

Because we conclude that CALCRIM No. 401 correctly states the law and that it, with CALCRIM No. 520, required the jury to find that Juarez personally harbored either express or implied malice, his section 1172.6 petition was properly denied.

II.  Juarez's supplemental contentions

Finally, as to issues Juarez raised in his own supplemental brief, they pertain to his trial; for example, that his trial counsel provided ineffective assistance of counsel, his *Miranda*[11] rights were violated, evidence was not elicited that he had brain injuries, gang evidence should have been excluded, and the victim's death was an accident. These issues are not properly before us on this appeal from a postconviction order denying a section 1172.6 petition.

---

[11]    *Miranda v. Arizona* (1966) 384 U.S. 436.

12

## DISPOSITION

The order denying Juarez's Penal Code section 1172.6 petition is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

I concur:


EGERTON, J.

LAVIN, J., Concurring:

*People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) is distinguishable and I agree with the majority's conclusion that the order should be affirmed.

Defendant was convicted of aiding and abetting the second degree murder of Isaac Salinas, as well as aiding and abetting the attempted murder of Candido Salinas. As defendant acknowledges in his appellate briefing, during the same incident, the same shooter, Jose Padilla, shot and killed Isaac and shot at but missed hitting Candido. The instructions on the attempted murder required the jury to find that "defendant intended to kill that person." Thus, unlike in *Langi*, defendant's jury was required to determine that he personally acted with express malice to convict him of attempted murder. Because the same incident involving the same shooter resulted in both the attempted murder and second degree murder convictions, I agree with the Attorney General that the jury necessarily determined that defendant committed second degree murder with express rather than implied malice.

I find *People v. Coley* (2022) 77 Cal.App.5th 539 (*Coley*) persuasive and would adopt its reasoning in this case. The appellant in *Coley*, like the defendant in this case, was convicted of second degree murder and attempted murder and appealed the denial of his petition for resentencing under Penal Code section 1172.6. (*Coley,* at pp. 541–542.) The trial court concluded that the record of conviction showed the jury had found express malice, i.e., a specific intent to unlawfully kill, when it convicted appellant of attempted murder, and therefore denied the petition. (*Id.* at p. 545.) The Court of Appeal affirmed, concluding that the "appellant's conviction for attempted murder demonstrates that

he was convicted of second degree murder with express rather than implied malice" and that "*Langi* does not apply because that case involves *implied* malice." (*Id.* at p. 547.) The court explained that the appellant was convicted of murder based on his aiding and abetting of the same shooting that gave rise to the attempted murder conviction, and that the jury was instructed that attempted murder requires a determination that the appellant intended to kill that person. (*Ibid.*) "[B]y finding appellant guilty of attempted murder, the jury necessarily found he had personally harbored intent to kill or express malice when he aided and abetted the second degree murder." (*Ibid.*)

Thus, as in *Coley, supra*, 77 Cal.App.5th 539, defendant's conviction for attempted murder demonstrates that his second degree murder conviction arising out of the same incident and involving the same shooter is based on express rather than implied malice. [1] Accordingly, the trial court did not err in denying defendant's petition for resentencing.

LAVIN, J.

---

[1] Defendant provides no authority or analysis for his contention that *Coley* is inapplicable "where the crime involved two shootings in the same incident, but separately committed."

2